**Melton G. HAMBLET and Cynthia A. Hamblet, Appellants,**

**v.**

**Beverly A. COVENEY, Appellee.**

**No. 01–85–0578–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

July 31, 1986.

---

Jack R. Bailey and Pete W. Weston, Law Offices of Jack R. Bailey, Houston, for appellants.

Clark G. Thompson, Law Offices of Clark G. Thompson, Houston, for appellee.

Before EVANS, C.J., and HOYT and DUNN, JJ.

## OPINION

HOYT, Justice.

This is an appeal from a judgment imposing a constructive trust against realty purchased by the appellants, Melton G. Hamblet and Cynthia A. Hamblet, from the appellee, Beverly A. Coveney.

Coveney became delinquent in her house mortgage payments and sought to sell it. The Hamblets learned of Coveney's delinquency and agreed to purchase the house for $117,800 if Coveney would agree to accept $80,000 cash and a promissory note for the difference. Coveney also agreed to loan the Hamblets an additional $27,139.03 from the sale proceeds, which amount was to be included in the promissory note to be executed by the Hamblets.

The Hamblets never executed the promissory note and now contend that the total sale price of the house was the amount appearing on the contract of sale dated September 24, 1979, i.e., $80,000. Coveney brought this suit alleging fraud by the Hamblets, and seeking the imposition of a constructive trust.

After a jury trial, the court entered a judgment in favor of Coveney in the amount of $87,789.14, imposed a second lien for that amount against the house, and ordered the house sold to satisfy the judgment. The Hamblets now appeal the judgment.

In points of error one, four, and twelve, the Hamblets contend that the trial court erred in failing to enter judgment for them due to the fact that the family relationship between Coveney and the Hamblets did not create a "confidential relationship" sufficient to support the establishment of a constructive trust, and that there is no evidence or insufficient evidence to support the jury's finding of a confidential relationship.

■ Before a constructive trust can be imposed, there must be strict proof of a prior confidential relationship and unfair conduct or unjust enrichment on the part of the wrongdoer. *Rankin v. Naftalis*, 557 S.W.2d 940 (Tex.1977). Regarding the existence of a prior confidential relationship, the Texas Supreme Court, quoting from 54 Am.Jur. *Trusts* sec. 225, has stated:

> While a confidential or fiduciary relationship does not in itself give rise to a constructive trust, an abuse of confidence rendering the acquisition or retention of property by one person unconscionable against another suffices generally to ground equitable relief in the form of the declaration and enforcement of a constructive trust, *and the courts are careful not to limit the rule or the scope of its application by a narrow definition of fiduciary or confidential relationships protected by it. An abuse of confidence within the rule may be an abuse of either a technical fiduciary relationship or of an informal relationship where one person trusts in and relies upon another, whether the relation is a moral, social, domestic, or merely personal one.*

(Emphasis in original.) *Fitz-Gerald v. Hull*, 150 Tex. 39, 48, 237 S.W.2d 256, 261 (1951).

The court further stated:

> It is not every relationship to which the term 'fiduciary' or 'confidential' can be applied with reason or plausibility, so as to raise a presumption of unfair dealings

between the parties to the relationship. *It is a question of the actual relationship between the parties that must be inquired into,* and not whether the terms 'fiduciary', 'confidential', or 'trust' can, with some degree of reason, be applied to the relationship.

*Id.* at 49, at 261.

To establish a constructive trust, it is not necessary to show fraud or intent not to perform an agreement when it was made. *Mills v. Gray,* 147 Tex. 33, 210 S.W.2d 985, 988 (1948) (quoting from 54 Am.Jur. *Trusts* sec. 233); *Thigpen v. Locke,* 363 S.W.2d 247 (Tex.1962).

■ Finally, the confidential relationship must exist apart and prior to the transaction made the basis of the lawsuit. *Rankin,* 557 S.W.2d at 944; *Kostelnik v. Roberts,* 680 S.W.2d 532 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). Whether a confidential relationship existed between the parties is a fact question for the jury. *Garcia v. Fabela,* 673 S.W.2d 933 (Tex. App.—San Antonio 1984, no writ).

In Special Issue Numbers 1 and 1–A, the jury found: (1) that there was a confidential relationship between Coveney and the Hamblets prior to September 24, 1979, separate and apart from the agreement by Coveney to sell her home to the Hamblets, and (2) that a confidential relationship existed between Coveney and the Hamblets on September 24, 1979.

■ The evidence, although disputed, shows that Cynthia Hamblet is the niece of Beverly A. Coveney; that the entire family has sustained a close relationship over the years; that Coveney had assisted and counselled Cynthia Hamblet through the years, developing a close relationship between the two; that the entire family frequently spent holidays together; that Melton Hamblet was accepted as part of the family; and, that she (Coveney) had grown to trust and rely upon him in the past and that she signed the contract with Melton Hamblet because the Hamblets wanted to purchase the house as an investment. This evidence was sufficient to support the jury's finding

that a confidential relationship did in fact exist between the parties.

We overrule points of error one, four, and twelve.

The Hamblets allege in point of error three that the trial court erred in failing to properly instruct the jury on the law relating to confidential relationships and that the Court further erred in refusing the additional instructions requested by them.

The trial court instructed the jury on confidential relationships as follows:

You are instructed that the term "confidential relationship," as used above, means a relationship where one person trusts and relies on another, whether the relationship is moral, social, domestic, merely a personal one, or grows out of a family situation.

■ The only function of an explanatory instruction in the charge is to aid and assist the jury in answering the issues submitted by the court. *Rendon v. Texas Employers' Insurance Association,* 599 S.W.2d 890 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.). Explanatory instructions should be submitted when, in the sole discretion of the trial judge, they will help the jury to understand the meaning and effect of the law and the presumptions thereby created. *Southern Pacific Transportation Co. v. Garrett,* 611 S.W.2d 670 (Tex. Civ.App.—Corpus Christi 1980, no writ).

■ Under Texas rules of civil procedure, the trial court has considerable discretion in deciding what instructions are necessary and proper when submitting issues to the jury. Tex.R.Civ.P. 277; *Rendon,* 599 S.W.2d at 896; *Garrett,* 611 S.W.2d at 674. Absent the showing of a denial of a party's rights which was reasonably calculated to cause and probably did cause rendition of an improper verdict in the case, no abuse of discretion on the part of the trial court is shown. *Steinberger v. Archer County,* 621 S.W.2d 838, 841 (Tex. App.—Fort Worth 1981, no writ); *Minschen v. Rogers,* 596 S.W.2d 179, 183 (Tex. Civ.App.—Houston [1st Dist.] 1980, no writ).

■ Based on our earlier discussion of what constitutes a confidential relationship, we hold that the instruction given by the trial court defining that term, in conjunction with Special Issue Numbers 1 and 1–A, was sufficient. The trial court did not commit error in refusing to submit the Hamblets' proposed instruction, but if it was error, such error was harmless because it was not reasonably calculated to cause and probably did not cause rendition of an improper verdict. Thus, no abuse of discretion on the part of the trial court has been shown.

We overrule the Hamblets' third point of error.

In points of error two and six, the Hamblets contend that the trial court erred in admitting parole evidence that contradicted and modified the written agreement of the parties, and in not rendering a judgment that any agreement that exceeded $80,000 was void. They contend that because Coveney signed documents at closing stating that the complete sale price was $80,-000, any contract providing for a different sale price violates 18 U.S.C. sec. 1014 (Supp.1986). That statute makes it a federal crime to falsify loan documents for the purpose of influencing a federal savings and loan association.

■ A contract to convey real property is subject to the Statute of Frauds and requires a writing in order to be enforceable. Tex.Bus. & Com.Code Ann. sec. 26.-01(b)(4) (Vernon Supp.1986). However, a constructive trust based on a prior confidential relationship and unfair conduct or unjust enrichment is an exception to this rule. *Ginther v. Taub*, 675 S.W.2d 724 (Tex.1984); *Rankin*, 557 S.W.2d at 944.

■ In Special Issues Numbers 16 and 17, the jury found that Coveney did in fact make a false statement to Benjamin Franklin Savings Association and that such false statement was knowingly made by her. However, in Special Issue Number 18, the jury found that the false statement was not made for the purpose of influencing Benjamin Franklin Savings Association. In Spe-

cial Issues Numbers 19, 20, and 21, the jury found that the Hamblets made a false statement to Benjamin Franklin Savings Association and that such statement was made for the purpose of influencing Benjamin Franklin Savings Association.

Although we question the jury finding that Coveney's false statement did not influence the action of Benjamin Franklin Savings Association in any way, the Hamblets are in no position to assert as a defense to Coveney's claim that Coveney also made a false statement to Benjamin Franklin Savings Association. It was at the Hamblets' behest, and because they could obtain only $80,000 in total financing, that Coveney agreed to sign paperwork necessary to close the sale. The Hamblets are not entitled to an unjust enrichment based upon improper extraneous conduct that they initiated and participated in. *See Ginther*, 675 S.W.2d at 728.

We overrule points of error two and six.

In point of error five, the Hamblets contend that the trial court erred in imposing a constructive trust on that portion of the real property owned by Cynthia A. Hamblet, due to the fact that the jury did not find any wrongdoing on her part.

■ Although the jury did not find wrongdoing on the part of Cynthia A. Hamblet, the jury did find that Mrs. Hamblet had been unjustly enriched by the purchase of Coveney's home. A constructive trust is an equitable remedy, based on the court's interest in preventing unjust enrichment rather than on any legally enforceable fiduciary relationships. *Harris v. Sentury Title Co.*, 715 F.2d 941, 946 (5th Cir.1983). In *Ginther*, the court held that the rule imposing a trust applies to a knowing or unknowing beneficiary of fraud, even though he is not the actual wrongdoer. 675 S.W.2d at 728.

■ Based on the fact that Cynthia A. Hamblet was unjustly enriched as a result of her husband's fraudulent conduct, the trial court did not err in imposing a constructive trust on Cynthia Hamblet's inter-

est in the real estate. Point of error five is overruled.

In points of error seven and eight, the Hamblets contend that the trial court erred in failing to render judgment on their behalf because there was no evidence showing the commission of actual or constructive fraud, and also because the jury did not find any false representation made by them.

■ Fraud, either actual or constructive, is an essential element in the creation or existence of a constructive trust. *May v. Little*, 473 S.W.2d 632 (Tex.Civ.App.—El Paso 1971, writ ref'd); *Nichols v. Acers Co.*, 415 S.W.2d 683 (Tex.Civ.App.—Austin 1967, writ ref'd n.r.e.).

■ The elements of actionable fraud are: (1) that a material representation was made; (2) that it was false; (3) that when the speaker made it, he knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; (6) that he suffered thereby. *Stone v. Lawyers' Title Insurance Corp.*, 554 S.W.2d 183 (Tex.1977). In contrast, constructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interest. *Archer v. Griffith*, 390 S.W.2d 735 (Tex.1964).

Tex.Bus. & Com.Code Ann. sec. 27.01(a) (Vernon 1968) deals with fraud in real estate and stock transactions. That provision provides that:

(a) Fraud in a transaction involving real estate or stock in a corporation or joint stock company consists of a

(1) *false representation* of a past or existing material fact, when the false representation is

(A) *made to a person for the purpose of inducing that person to enter into a contract;* and

(B) *relied on* by that person in entering into that contract; or

(2) *false promise to do an act* when the false promise is

(A) material;

(B) *made with the intention of not fulfilling it;*

(C) made to a person *for the purpose of inducing that person to enter into a contract; and*

(D) *relied on by that person* in entering into that contract.

■ The jury, in its answers to the special issues, found: (1) that Melton Hamblet agreed to purchase Coveney's home for a total consideration of $117,800; (2) that such total consideration of $117,800 was to consist of $80,000 cash plus the execution and delivery to Coveney of a promissory note in the sum of $37,800; (3) that Coveney trusted and believed that Melton Hamblet would execute and deliver to her a promissory note in the sum of $37,800; (4) that Melton Hamblet engaged in unfair conduct in purchasing Coveney's home; (5) that the Hamblets were unjustly enriched by their purchase of Coveney's home; (6) that Melton Hamblet promised to execute and deliver a promissory note in the principal sum of $37,800 to Coveney if she would convey her home to the Hamblets; (7) that such promise by Melton Hamblet was material to the sale of Coveney's home to the Hamblets; (8) that such promise was made by Melton Hamblet with the intention of not fulfilling it; (9) that such promise was made by Melton Hamblet for the purpose of inducing Coveney to enter into the contract dated September 24, 1979, effectuating the sale of her (Coveney's) home to the Hamblets; and (10) that such promise was relied upon by Coveney in entering into the contract for the sale of her home to the Hamblets.

The evidence shows that Melton Hamblet could not obtain financing for the entire $117,800, so he proposed to Coveney that he obtain $80,000 in financing and execute a note to her for the remaining $37,800, bearing interest at a rate of 10%; that Melton Hamblet persuaded Coveney to sign

the documents at the sale closing, listing the total sale price as $80,000, by assuring her that they had their own side agreement.

We hold that the evidence was sufficient to support the jury's finding of constructive fraud, and we accordingly overrule points of error seven and eight.

In point of error nine, the Hamblets contend that the trial court erred in failing to render a judgment for them because the jury did not properly determine damages.

In Special Issue Number 7, the jury was asked to determine the remaining balance, plus accrued interest, owed to Coveney by the Hamblets for the purchase of the Coveney's home. The second portion of that special issue asked the jury to determine what portion of the $27,139.03 cash proceeds loaned by Coveney to the Hamblets remained due and owing. In response to those questions, the jury answered $57,-351.53 and $27,437.61, respectively. The judgment awarded Coveney the sum total of those two figures, or $84,789.14.

The Hamblets' complaint is that the award under part one of Special Issue Number 7 was less than Coveney requested, and that the award under part two exceeded the amount that Coveney requested.

■ In order to recover a verdict for damages, the damages must be established with reasonable certainty. *Hughes v. Houston Northwest Medical Center, Inc.*, 680 S.W.2d 838, 842 (Tex.App.—Houston [1st Dist.] 1984, no writ). Failure to establish the exact amount of damages when it is incapable to ascertain the exact amount is no basis for denying recovery. *Vance v. My Apartment Steakhouse*, 677 S.W.2d 480, 484 (Tex.1984).

■ In the present case the Hamblets challenge the jury's award because the jury's calculations resulted in the award of a lesser amount of damages in one instance and larger amount in another. We note that the point of error does not challenge the principal amount remaining unpaid nor does it contend that the verdict was exces-

sive, but speculates that the jury used an incorrect method of calculating interest or erred in some other respect. We are not in a position to say that the jury was incorrect. There is no evidence presented in the Hamblets' motion or new trial or in their belief on appeal that establishes the error complained of.

We hold, after reviewing the entire record, that the verdict was not the result of improper considerations, but is supported by the evidence.

Point of error nine is overruled.

Point of error ten contends that the trial court erred in impressing a second lien on the subject real property because there was no jury issue or evidence to support such action by the court.

■ There is no unyielding formula to which a court of equity is bound in decreeing a constructive trust, *because the equity of the transaction will necessarily shape the measure of the relief granted.* *Meadows v. Bierschwale*, 516 S.W.2d 125 (Tex. 1974). A court of equity, in decreeing the establishment of the trust, may direct the manner of enforcement of the trust by impressing an equitable charge or *lien* upon the property, rather than effecting a division of the property in kind. *Bush v. Gaffney*, 84 S.W.2d 759 (Tex.Civ.App.—San Antonio 1935, no writ).

In decreeing the establishment of a constructive trust, the trial court was acting within its authority in impressing an equitable lien upon the property. Point of error ten is overruled.

Finally, the Hamblets contend that in impressing a lien on the property the trial court violated the provisions of Tex. Const. art. XVI, sec. 50, because the house was their homestead.

■ This argument fails, among other reasons because the rule relative to exemption of homesteads is inapplicable against the person to whom the purchase money is due. *Roy v. Clark*, 75 Tex. 28, 12 S.W. 845 (1889).

The evidence shows and the jury found that a portion of the funds owed to Coveney by the Hamblets was the original purchase price. It is a well settled rule that "[U]ntil the purchase money is paid, the purchaser has not such an estate as will support the homestead right against the person to whom such purchase money is due." *Id.* at 33; at 847.

Point of error eleven is overruled, and the judgment of the trial court is affirmed.