NO. 07-07-0072-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JANUARY 21, 2009

______________________________


IN THE INTEREST OF G.K.D., A CHILD

_________________________________

FROM THE COUNTY COURT AT LAW NO. 3 OF LUBBOCK COUNTY;

NO. 96-558,341; HON. PAULA LANEHART, PRESIDING

_______________________________

Before CAMPBELL and HANCOCK, JJ., and BOYD, S.J.



MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â In one point, appellant Sherry Kay Lesley (Lesley) contends the trial court erred in
failing to award sufficient retroactive child support in its order increasing child support to
be paid by appellee Grant Dukes (Dukes). In its December 21, 2006 order giving rise to
this appeal, the trial court increased the amount of monthly child support due by Dukes
retroactively from October 1, 2006. In this appeal, Lesley argues that the increased child
support payments should have been ordered from the January 17, 2006 filing of Dukesâ
answer to her request for increased child support. Disagreeing that the trial court erred,
we affirm its judgment.

Discussion

Â Â Â Â Â Â Â Â Â Â The Family Code gives a trial court authority to retroactively modify child support
obligations accruing after the earlier of the date of service of citation or the date of the
appearance of the respondent in such an action. Tex. Fam. Code Ann. Â§156.401(b)
(Vernon 2008). The record reveals that Lesleyâs motion to increase child support was filed
on December 20, 2005, Dukes was served with citation on December 26, 2005, and he
answered the motion on January 17, 2006.

Â Â Â Â Â Â Â Â Â Â The trial court originally set the hearing on the motion on May 22, 2006. Because
of a death in his family, Lesleyâs counsel sought and obtained a continuance until July 11,
2006. On July 10, 2006, Lesleyâs counsel, alleging that both he and Dukesâ attorney had
conflicting trial settings, obtained a continuance and the matter was reset for August 10,
2006. On August 9, Lesleyâs counsel sought another continuance on the basis that he
would be out of town on August 10, and that Dukesâ attorney was set for appearance in
another court. This motion was granted and the hearing reset for October 19, 2006.

Â Â Â Â Â Â Â Â Â Â On September 15, 2006, Lesleyâs counsel amended her motion to modify and
added a count seeking the modified child support retroactive to the earlier of the time of
service of citation upon Dukes or the time of his appearance on the modification motion. 
The motion was heard at the scheduled time of October 19, 2006. On December 21,
2006, the trial court entered the order giving rise to this appeal. In the order, as material
to this appeal, it included a provision providing for increased child support from October 1,
2006. As we have noted, in her one issue, Lesley contends the trial court reversibly erred
in not ordering the increased child support retroactive to January 17, 2006, the date of
Dukesâ answer to her motion seeking increased child support.

Â Â Â Â Â Â Â Â Â Â We review the decision of the trial court in matters such as this under an abuse of
discretion standard which occurs when the judge acts without reference to any guiding
rules or principles. See In re Tucker, 96 S.W.3d 662, 668 (Tex. App.âTexarkana 2003, no
pet.). In making that decision, we bear in mind that while the existence of evidence
supporting the trial courtâs decision depends not only on whether it acted without reference
to guiding rules and principles but whether the evidence supports it decision. Nordstrom
v. Nordstrom, 965 S.W.2d 575, 582 (Tex. App.âHouston [1st Dist.] 1997, pet. denied); In
re Hamer, 906 S.W.2d 263, 265 n.1(Tex. App.âAmarillo 1995, no writ). Also, in performing
that task, we review the evidence in a light most favorable to the trial courtâs decision, and
we must indulge in every presumption favoring the judgment. In re Tucker, 96 S.W.3d at
665. 

Â Â Â Â Â Â Â Â Â Â Here, the evidence was focused chiefly upon Dukesâ increased net resources. 
There was evidence that while Lesley provided the childâs residence in Marble Falls, she
agreed that they also lived in Horseshoe Bay. There was evidence she had remarried and
occupied a home valued at one million dollars. Her husband was in the real estate
business while she operated a property renovation business. Dukes testified that he had
purchased a duplex in Horseshoe Bay and when he traveled from his home in Abilene to
spend his designated weekends with G.K.D., he stayed there because that living
arrangement provided a better environment for G.K.D. than a hotel room. The evidence
also showed that Dukes frequently traveled to G.K.D.âs Thursday night junior varsity
games. He furnished an expense summary showing that the cost of the trips to Horseshoe
Bay and the purchase expenses of the duplex amounted to some $4,000 per month.

Â Â Â Â Â Â Â Â Â Â The purpose of awarding retroactive child support is to remove any motive by an
obligor to delay proceedings because absent such power, there would be considerable
motive to do so. In re H.S.N., 69 S.W.3d 829, 833 (Tex. App.âCorpus Christi 2002, no
pet.). Although for apparent good reasons, and with the agreement of Dukes, Lesleyâs
three motions for continuance nevertheless added five months to the pretrial period.

Â Â Â Â Â Â Â Â Â Â We also note that it was only after obtaining three continuances and with trial a
month away that Lesley sought retroactive child support for the first time. Although
Lesleyâs motion contained fair notice of her claim for retroactive child support, we find that
the timing of that request, together with the evidence produced at the hearing, is sufficient
to justify the trial courtâs discretion in limiting the period of the retroactivity to October 1, the
first day of the month following service of Lesleyâs amended motion. 

Â Â Â Â Â Â Â Â Â Â Accordingly, Lesleyâs issue is overruled, and the order of the trial court is affirmed.

Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â John T. Boyd

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Senior Justice 


 Indeed, the will was not admitted to probate until June 19, 1996, well over
a year after the lawsuit was filed. 

 Furthermore, although the statute appears to contemplate a single lawsuit, the
provisions of the act requiring all beneficiaries to be parties is primarily for the benefit of
the defendant to protect it from several lawsuits arising out of the same incident. Avila v.
St. Luke's Lutheran Hosp., 948 S.W.2d 841, 850 (Tex.App.--San Antonio 1997, writ
denied); Schwing v. Bluebonnet Exp., Inc., 470 S.W.2d 133, 137-38 (Tex.Civ.App.--
Houston [14th Dist.] 1971), rev'd in part on other grounds, 489 S.W.2d 279 (Tex. 1973). 
The defendant's failure to raise the issue may result in its waiver. Avila, 948 S.W.2d at
850; see also Schafer v. Stevens, 352 S.W.2d 471, 474 (Tex.Civ.App.--Dallas 1961, writ
dism'd). Moreover, each beneficiary can only recover the damages he has individually
sustained by reason of the death. Avila, 948 S.W.2d at 851. Beneficiaries who are not
included in the lawsuit have been found entitled to bring their own lawsuit to recover the
damages to which they individually may be entitled. Id. Thus, appellant had the right to
bring his own lawsuit if he had chosen to do so. 

 Moreover, appellant produced no evidence in the record to show that he would have
recovered damages because of the wrongful death of his father. He also fails to indicate
the amount of any pecuniary loss or the extent of mental anguish for which he might have
been entitled to recover. Thus, the actions or inactions of Inez in failing to include
appellant in the lawsuit were not the proximate cause of any determinable loss to him. 

 Appellant further complains that, as executrix and as his stepmother, Inez owed him
a fiduciary duty to inform him that he was not included in the wrongful death lawsuit
because she had a duty to apprize him of facts that might affect his rights. Although
appellant contends that Earl made affirmative representations to him that his rights were
being protected, it is not disputed that Inez made no such representations to appellant. 
In fact, the evidence shows that Inez and appellant had not communicated since prior to
the death of appellant's father. Therefore, Inez's liability in this regard, if any, can only be
predicated upon some duty on her part to provide appellant with information. Generally,
there is only a duty to speak when the parties have a confidential or fiduciary relationship
with one another. Insurance Co. of North America v. Morris, 981 S.W.2d 667, 674 (Tex.
1998). 

 The duty of an executor and trustee is to administer the estate or trust for the benefit
of the beneficiaries. Huie v. DeShazo, 922 S.W.2d 920, 924 (Tex. 1996). Executors and
trustees owe beneficiaries a duty of full disclosure of all material facts known to them that
might affect the rights of the beneficiaries. Id. at 923. When the estate was joined as a
party to the wrongful death lawsuit, it was for the purpose of asserting any survivor claim
that might be proven to exist. As we have already discussed, appellant suffered no
damages as a result of not being informed of the survivor action. 

 We must, therefore, determine whether Inez, as a result of some confidential
relationship, owed an independent duty to appellant to inform him of his exclusion as a
party to the wrongful death lawsuit or that she had not sued on behalf of all statutory
parties. Appellant insists that the "familial, formal and informal relationships existing
between Joe Trostle and Inez Trostle gave rise to a fiduciary duty." Where one person is
accustomed to being guided by the judgment or advice of another or is justified in believing
one will act in the best interest of another because of a family relationship, a confidential
relationship may arise. Thigpen v. Locke, 363 S.W.2d 247, 253 (Tex. 1962). Thus, an
informal relationship may give rise to a fiduciary duty in situations in which one person
trusts and relies on another whether the relationship is moral, social, domestic or personal. 
Schlumberger Technology Corp. v. Swanson, 959 S.W.2d 171, 176 (Tex. 1997). However,
mere subjective trust does not create a fiduciary relationship. Id. at 176; Locke, 363
S.W.2d at 253. The existence of such a relationship is determined from the actual facts
of the relationship between the persons. Id. 

 The only factual basis appellant asserts for the proposition that such a relationship
existed between Inez and himself is that Smithee "concluded the relationship was close
enough that he should rely on Inez Trostle's statements that Joe Trostle did not want to
be included in the lawsuit." (2) Whether or not Inez's attorney felt he was entitled to rely on
statements made by Inez provides no objective facts from which the nature of the
relationship between Inez and appellant may be determined. However, other summary
judgment evidence, including the testimony of both appellant and Inez, showed that they
were not particularly close because of some differences between Inez and appellant's wife,
and that appellant and Inez had not spoken to each other since before the death of
appellant's father. They apparently did not even speak to each other at the funeral. It
cannot be said that appellant relied on Inez for moral, financial, or personal support or
guidance. 

 Moreover, appellant testified in his deposition that, because of a telephone
conversation with Smithee in August 1998, he knew he had not been included as a party
to the wrongful death lawsuit and that the case was set to go to trial the following month. (3) 
He attempts to contradict this testimony with an affidavit in response to the motion for
summary judgment in which he avers he did not know he was not a party plaintiff or
entitled to any of the lawsuit proceeds until after the case went to trial. He further states
in that affidavit that Smithee did not inform him that he was not included in the lawsuit. 
However, an affidavit which conflicts with deposition testimony may not be used to raise
a fact issue with respect to a motion for summary judgment without an explanation. 
Farroux v. Denny's Restaurants, Inc., 962 S.W.2d 108, 111 (Tex.App.-- Houston [1st Dist.]
1997, no pet.); but see Thompson v. City of Corsicana Housing Authority, 57 S.W.3d 547,
557 (Tex.App.-- Waco 2001, no pet. h.) (holding that inconsistencies in the summary
judgment evidence of a single witness create a fact issue). The trial court sustained the
objections of Inez to appellant's affidavit, and that ruling has not been challenged on
appeal. Although appellant knew prior to trial that he was not a party to the lawsuit, he
made no attempt to intervene and did not immediately consult an attorney. We do not
believe that Inez had a duty to inform appellant that he was not a party to the wrongful
death lawsuit.

 Appellant further contends that genuine issues of material fact have been raised as
to a civil conspiracy to defraud. The elements of a civil conspiracy are (1) two or more
persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or
course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate
result. Operation Rescue-National v. Planned Parenthood of Houston and Southeast
Texas, Inc., 975 S.W.2d 546, 553 (Tex. 1998). Such a conspiracy existed, appellant
argues, because both Inez and Earl told Smithee that appellant did not want to be included
in the lawsuit for the purpose of depriving him of his opportunity to participate and the
proceeds therefrom. The elements of a civil conspiracy as already stated require
participation in some underlying tort. Tilton v. Marshall, 925 S.W.2d 672, 681 (Tex. 1996). 
Because we have determined that Inez had no duty to inform appellant he was not
included in the wrongful death lawsuit and entitled to bring his own wrongful death lawsuit,
and because there was no recovery by the estate with respect to any survivor claims, there
have been no unlawful acts as required. Therefore, appellant's conspiracy claim must
necessarily fail. 

 Appellant also challenges the trial court's failure to grant him equitable relief in the
form of the imposition of a constructive trust, a temporary injunction, the appointment of
a receiver, and an accounting. A constructive trust is imposed to redress wrong or prevent
unjust enrichment. Meadows v. Bierschwale, 516 S.W.2d 125, 131 (Tex. 1974). We have
already found that Inez did not commit a wrongful act and therefore she could not profit
from a wrong or be unjustly enriched. See Tripp Village Joint Venture v. MBank Lincoln
Centre, N.A., 774 S.W.2d 746, 750 (Tex.App.--Dallas 1989, writ denied). Thus, appellant
is not entitled to a constructive trust. 

 The purpose of a temporary injunction is to preserve the status quo pending a trial
on the merits. Walling v. Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993). To be entitled to a
temporary injunction, an applicant must show a probable injury and a probable right of
recovery. Id. at 57. Once again, because we have determined that summary judgment,
which is a final disposition, was correctly granted, there is no necessity for a temporary
injunction to preserve the status quo. 

 Appellant cites no authority to support his argument that he is entitled to an
equitable accounting or the appointment of a receiver. Suffice it to say that because we
have concluded that appellant is not entitled to any of the settlement proceeds from the
lawsuit as an heir and Inez did not wrongfully exclude him from the wrongful death cause
of action, we can see no basis upon which to order an accounting or the appointment of
a receiver. 

 Appellant additionally asserts, however, that he is entitled to an accounting from
Inez as executrix of the estate based on section 149A(a) and (b) of the Probate Code. The
version of that section in effect at the time in question provided in pertinent part:

 (a) Interested Person May Demand Accounting. At any time after the
expiration of fifteen months from the date that an independent administration
was created and the order appointing an independent executor was entered
by the county court, any person interested in the estate may demand anaccounting from the independent executor. . . .


 (b) Enforcement of Demand. Should the independent executor not comply
with a demand for an accounting authorized by this section within sixty days
after receipt of the demand, the person making the demand may compel compliance by an action in the county court or by a suit in the district court. 
After a hearing, the court shall enter an order requiring the accounting to be

 made at such time as it deems proper under the circumstances. 

Tex. Prob. Code Ann. § 149A(a) and (b) (Vernon 1980). Appellant requested a voluntary
"complete accounting of the estate" by letter dated May 4, 1999, to the attorney
representing the estate. In response, the attorney indicated that an accounting would be
provided.

 This lawsuit was then filed on October 4, 1999, but no request for a statutory
accounting was made in the petition. In his first amended petition filed on December 15,
1999, and his second amended petition filed on July 10, 2000, appellant requested "an
accounting of all income, revenue, expenses, transactions, transfers, disbursements,
opportunities, investments of the Defendants, their agents, attorneys, representatives and
affiliated companies and family members since January 1994." However, this request was
not made under the provisions of the Probate Code and is much broader than the statutory
accounting required by the executor of an estate. In his response to the motion for
summary judgment, appellant requested for the first time both an equitable accounting and
an accounting pursuant to the Probate Code. Therefore, appellant's request for a statutory
accounting was not before the trial court at the time the summary judgment motion was
filed, and there was no amended pleading to support that request. See Jones v. Wal-Mart
Stores, Inc., 893 S.W.2d 144, 148-49 (Tex.App.--Houston [1st Dist.] 1995, no writ). Thus,
that complaint may not defeat the summary judgment. 

 In arguing that he presented a substantial amount of evidence to defeat Inez's no-
evidence summary judgment motion, appellant alternatively complains that an inadequate
amount of time had passed for discovery at the time the motion was filed, and thus it was
not yet ripe for the filing of such a motion. The basis asserted for this position is that
Smithee's deposition was taken on February 23, 2001, and significant revelations occurred 
"concerning the conduct of the Defendants and parties associated with them." Also,
documents were produced at that deposition which had not been previously produced. 
Therefore, he posits, these facts, coupled with his motion to recuse, greatly prejudiced his
ability to respond. 

 Appellant filed a motion for continuance of the summary judgment hearing on the
basis that he had filed a motion to compel "the production of documents which are
essential to Plaintiff's case" and a motion to recuse the trial judge who was a material fact
witness. The motion was denied, and appellant has not challenged that court's ruling. 
Moreover, appellant has failed to state any specific "significant revelations" which were
first learned at the Smithee deposition, or the nature of the documents which were
produced and the reasons why those documents being produced at that particular time
prejudiced his ability to respond to the summary judgment motion. 

 Rule 166a(i) provides in relevant part:


 (i) No-Evidence Motion. After adequate time for discovery, a party without
presenting summary judgment evidence may move for summary judgment
on the ground that there is no evidence of one or more essential elements
of a claim or defense on which an adverse party would have the burden of
proof at trial.

 

Tex. R. Civ. P. 166a(i). We review a court's decision on a request for continuance of a
summary judgment motion because of an inadequate amount of time for discovery under
an abuse of discretion standard, and the decision is made on a case specific basis. 
McClure v. Attebury, 20 S.W.3d 722, 729-30 (Tex.App.--Amarillo 1999, no pet.). The
existence of adequate time for discovery is determined by the nature of the cause of
action, the nature of the evidence necessary to controvert the motion, and the length of
time the case has been active. Specialty Retailers, Inc. v. Fuqua, 29 S.W.3d 140, 145
(Tex.App.--Houston [14th Dist.] 2000, pet. denied); Dickson Const., Inc. v. Fidelity & Deposit
Co. of Maryland, 5 S.W.3d 353, 356 (Tex.App.--Texarkana 1999, pet. denied). Other
factors may include the amount of time the motion has been on file, whether the movant
has requested stricter deadlines for discovery, the amount of discovery that has already
taken place, and whether the discovery deadlines that are in place are specific or vague. 
Fuqua, 29 S.W.3d at 145. 

 The record shows that the original petition in this lawsuit was filed on October 4,
1999. The motion for summary judgment was filed on January 25, 2001. Appellant's
motion to recuse was not filed until March 1, 2001, at the same time he filed his response
to the motion for summary judgment. The basis for that recusal motion was that the judge
was likely to be a material witness in the case because he refused to submit jury questions
in the wrongful death lawsuit brought by Inez and Earl which concerned appellant's rights. (4) 
The hearing on the motion for summary judgment took place on June 21, 2001, after
appellant's recusal motion had been ruled on. 

 Furthermore, every case is governed by a discovery control plan. Tex. R. Civ. P.
190.1. Inez asserts, and appellant has not contradicted the assertion, that this case was
governed by Level 2, under which all discovery must be conducted during the discovery
period, which begins when suit is filed and continues until the earlier of 30 days before the
date set for trial or nine months after the earlier of the date of the first oral deposition or
the due date of the first response to written discovery. Tex. R. Civ. P. 190.3(b)(1). While
evidence of the first written discovery does not appear in the record, the summary
judgment evidence shows that appellant, Earl and Inez were all deposed in July 2000, and
it was more than nine months later before the hearing on the motion for summary judgment
took place. The comment to the rule states that a "discovery period set by pretrial order
should be adequate time opportunity for discovery unless there is a showing to the
contrary, and ordinarily a motion under paragraph (i) would be permitted after the period
but not before." Id. Notes and Comments. Appellant has not alleged or shown that the
motion for summary judgment was filed prior to the end of the discovery period, and we
find no abuse of discretion on the part of the trial court in refusing to grant a continuance.

 Appellant also argues that his claims are not barred by the statute of limitations
because his causes of action accrued at the time of the settlement agreement between the
parties in the wrongful death lawsuit and the dispersion of the settlement proceeds, while
Inez asserts that the various causes of action began to accrue on the date the wrongful
death lawsuit was filed. The wrongful death lawsuit was filed on May 19, 1994, and this
lawsuit on October 4, 1999, more than four years later. However, the settlement
agreement in the wrongful death lawsuit was signed on May 27, 1999. We have discussed
the merits of the summary judgment motion as if the statute of limitations was not an issue
and found the trial court's granting of the motion to have been warranted. Therefore, it is
not necessary for us to rule on the limitations issue.

 Finally, in positing that he presented substantial evidence to defeat the no-evidence
motion for summary judgment, appellant argues the same evidence which we have already
discussed. Therefore, we overrule appellant's issue and affirm the judgment of the trial
court. 


 John T. Boyd

 Chief Justice


Publish.


1. The summary judgment evidence indicates that originally, the will was filed as a
muniment of title only.
2. Inez claimed she did not tell Smithee that appellant did not want to participate, but 
her attorneys contacted appellant and told her that was what appellant said.
3. The case did not actually go to trial until November 1998. 
4. Appellant's initial motion to recuse was denied on the basis that it did not comply
with Rule 18a of the Rules of Civil Procedure. Thereafter, appellant filed an amended
motion to recuse, which was denied on April 24, 2001.